UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALEXANDER MOLDOVAN** and
**DIANE HEMINGWAY,**

      Plaintiffs,                                  Case No.
**v.**                                                                   Hon.

**ORGAN PROCUREMENT**
**AGENCY OF MICHIGAN,**
d/b/a **GIFT OF LIFE MICHIGAN,**
a Michigan nonprofit corporation,

      Defendant.

---

**GOLD STAR LAW, P.C.**
**Maia Johnson Braun (P40533)**
**David A. Hardesty (P38609)**
Attorneys for Plaintiffs
2701 Troy Center Dr., Ste. 400
Troy, Michigan 48084
(248) 275-5200
*mjohnson@goldstarlaw.com*
*dhardesty@goldstarlaw.com*

---

## COMPLAINT

      Plaintiffs, Alexander Moldovan and Diane Hemingway, through their attorneys, Gold Star Law, P.C., for their Complaint state:

### PARTIES, JURISDICTION AND VENUE

      1.    Plaintiff Alexander Moldovan ("Moldovan") is an individual who resides in Grand Ledge, Eaton County, Michigan.

2. Plaintiff Diane Hemingway ("Hemingway") is an individual who resides in Mount Morris, Genesee County, Michigan.

3. Defendant Organ Procurement Agency of Michigan is a Michigan nonprofit corporation with its headquarters in Ann Arbor, Michigan.

4. This action arises under the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. 201, *et seq.*, and jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331.

5. Defendant resides within this judicial district and the claims asserted in the action arose within this district. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b).

**FACTUAL ALLEGATIONS**

6. Defendant operates as a not-for-profit organ procurement organization.

7. Moldovan began working full time for Defendant as a Tissue Procurement Specialist from May 20, 2013 until he was terminated from his position on October 20, 2017.

8. Hemingway began working full time for Defendant as a Tissue Procurement Specialist on or about December 2007 until she was terminated from her position on November 1, 2017.

9. Plaintiffs were only required to have a high school diploma or its equivalent for the position.

10. Tissue Procurement Specialists are primarily responsible for surgically recovering human tissue for transplant.

11. On average, Plaintiffs were scheduled to work four to five 24-hour on-call shifts per week, for a total of 96 to 120 hours per week.

12. Plaintiffs were required to immediately respond to a call when they were on-call and needed to be prepared to respond to a call at all times because the process of recovering tissue has to be initiated within 24 hours of the donor's death, and Plaintiffs would frequently receive calls with less than 24 hours remaining for recoveries. Additionally, Plaintiffs often had to travel long distances to locations throughout Michigan for recoveries, including the Upper Peninsula.

13. Travel to and from a recovery site was a principal aspect of Plaintiffs' jobs with Defendant.

14. Plaintiffs often had to communicate with various other individuals concerning the tissue recovery during their travel to and from a recovery site.

15. In addition to recovering tissue and traveling to various locations throughout Michigan, Plaintiffs were responsible for performing clerical work while on-call, including entering donor recovery data into software programs,

coordinating donor transportation, facilitating the shipment of recovered tissue, and completing documentation for the processing of donor records.

16.  Plaintiffs regularly made phone calls across state lines and used the interstate mails to transfer donated tissue to tissue banks throughout the United States.

17.  Plaintiffs were unable to use their on-call time to engage in personal activities and needed to stay within a close geographic proximity of their homes while they were are on-call because they needed to have access to a computer and the Internet in case they received a call and to perform clerical work.

18.  Once Plaintiffs were scheduled to work an on-call shift, Plaintiffs were generally unable to switch their shift due to staff shortages.  Additionally, Plaintiffs might be reprimanded if they tried to turn down an on-call case.

19.  Defendant paid Plaintiffs at a flat rate of $300.00 per recovery (or $350.00 per recovery if working as team leaders).  Defendant did not compensate Plaintiffs for any travel time or for performing clerical work while on-call.

20.  Prior to October 2015, Defendant did not compensate Plaintiffs for any of their on-call time if they did not perform any recoveries during their shift. Defendant implemented a new policy in or around October 2015, requiring Defendant to pay Plaintiffs $50.00 per on-call shift if Plaintiffs were scheduled to work as team leaders and if Plaintiffs did not perform any recoveries.

21. In addition to working the on-call shifts, Plaintiffs frequently had to perform clerical work on the days that they were not scheduled to work. Defendant did not compensate Plaintiffs for performing clerical work on the days that they were not scheduled.

22. Defendant was required to compensate Plaintiffs at 1 ½ times their regular rate of pay for hours worked in excess of 40 hours per week. Defendant did not compensate Plaintiffs at 1 ½ times their regular rate of pay for hours worked in excess of 40 hours per week.

23. Plaintiffs were not, at any time during their employment, exempt from the overtime pay requirements of the FLSA.

24. All hours worked by Plaintiffs, including overtime hours, were worked at the direction and with the sufferance of Defendant.

25. Defendant's failure to pay overtime in violation of the FLSA was willful, with knowledge, or with reckless disregard of the statutory overtime requirements.

26. The difference between what Moldovan made, and what he should have made if he had been properly paid pursuant to the FLSA, is at least $67,000.00.

27. The difference between what Hemingway made, and what she should have made if she had been properly paid pursuant to the FLSA, is at least $93,000.00.

## CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

28. Plaintiffs incorporate the foregoing allegations of this Complaint as if fully stated herein.

29. Defendant is an "employer" within the coverage of the FLSA. 29 U.S.C. 203(d).

30. Plaintiffs are "employees" within the coverage of the FLSA. 29 U.S.C. 203(e).

31. Defendant is an "enterprise engaged in commerce" as defined by the FLSA. 29 U.S.C. 203(s).

32. Plaintiffs are "employees" engaged in "commerce" as defined by the FLSA. 29 U.S.C. 203(b).

33. Defendant had revenues in excess of $500,000 per year during the time of Plaintiffs' employment with Defendant. 29 U.S.C. 203(s).

34. Pursuant to Section 207 of the FLSA, Defendant was required to pay Plaintiffs 1 ½ times their regular rate of pay for hours worked in excess of 40 per week.

35. Defendant violated Section 207 of the FLSA by failing to pay Plaintiffs 1 ½ times their regular rate of pay for hours worked in excess of 40 per week.

36. Pursuant to Section 216(b) of the FLSA, Defendant is liable to Plaintiffs for unpaid overtime compensation, plus an additional equal amount as liquidated damages, together with reasonable attorney fees and costs.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendant in an amount to be determined at trial, together with their costs and reasonable attorney fees incurred herein, and such other relief as this Court deems just and equitable.

        Respectfully submitted,

        **GOLD STAR LAW, P.C.**

        /s/ *Maia Johnson Braun*
        **Maia Johnson Braun (P40533)**
        **David A. Hardesty (P38609)**
        Attorneys for Plaintiffs
        2701 Troy Center Dr., Ste. 400
        Troy, Michigan 48084
        (248) 275-5200
        *mjohnson@goldstarlaw.com*
        *dhardesty@goldstarlaw.com*

Dated: September 13, 2019